## BOWLES v. FIELD et al.

(Circuit Court, D. Indiana. December 31, 1897.)

No. 9,316.

1. CONTRACTS OF MARRIED WOMEN—CONFLICT OF LAW—PUBLIC POLICY.

A promissory note of a married woman, valid under the laws of the state where made, is binding upon her, and the enforcement thereof is not precluded by the public policy of the state of Indiana, although under its laws she was prohibited from making such a contract.

**2. SAME—FOR THE BENEFIT OF HUSBAND.**

In an action on a note of a married woman, she cannot claim credit thereon for the amount of the proceeds applied to the purchase of property for her husband, or given to him, or paid in discharge of his obligation, when she took and retained such obligation.

This was a suit by Frank Bowles against Elizabeth S. Field and Frank B. Field to foreclose a mortgage on real estate situated in Indiana, and executed by them, as husband and wife, to secure a note of Elizabeth Field executed by her in the state of Ohio.

D. W. McKee and Morrow & Goodhart, for complainant.

Addison C. Harris, for defendants.

BAKER, District Judge. After a careful consideration of the argument and authorities presented on the final hearing, the court still adheres to the views expressed in Bowles v. Field, 78 Fed. 742. If it were conceded that the consideration of the note and mortgage in suit rested upon the notes executed and made payable by the feme defendant and her husband in the state of Ohio, and that she was surety for her husband thereon, I am still of opinion that her liability, so created, constituted a sufficient consideration to uphold the note and mortgage in suit. These notes, executed and made payable in Ohio, were valid and binding obligations there, because by the law of that state the feme defendant had the same ability to bind herself by contract as though she had been unmarried. They were the joint and several obligations of herself and her husband, and as to the payee each stood as a principal. . Nor do I think the public policy of this state precludes the enforcement of such obligations. The policy of this state has been to enlarge the rights of married women by removing their common-law disabilities, and, simply because this policy has not been carried so far here as in many of our sister states, it cannot well be maintained that the policy of our state is so repugnant to the more liberal policy of other states that the courts of the United States ought to refuse to enforce contracts valid by their laws. The policy of congress, as disclosed by its legislation touching the rights and liabilities of married women in the District of Columbia, is the same as the policy of the state of Ohio. 16 Stat. 45; Sykes v. Chadwick, 18 Wall. 141. If there was an irreconcilable conflict in the public policy of the two states on this subject I should be of opinion that this court ought to be governed by the more liberal policy indicated by the act of congress rather than by the public policy indicated by the statutes of this state. The note and mortgage in suit were executed to secure a loan made by the feme defendant of $4,000. She alone executed the note, and the mortgage was executed in conformity with the law of this state by husband and wife. She received a check for that amount at the time, drawn by the complainant on the Citizens' Bank of Harrison, Ohio, and the bank paid the check, and gave her credit for that amount upon its books. On the same day that she received the check and the credit, she drew four checks against the money so on deposit in her name. One check was for $391.12, payable to Francis M. Hellowell, to pay off a material man's lien which he had taken upon certain buildings and land belonging

to the feme defendant. This lien, in my opinion, was a valid claim against her. She also drew her check on the Citizens' Bank in favor of Albert Williams to pay off a mechanic's lien held by him against her property for $115.15. This was a valid claim against her, and was rightfully paid off. She also drew her check for $100, payable to the complainant, to take up a note for that amount, executed by her in Ohio, for money which she had borrowed on her personal credit, and for her own use, on February 27, 1891. She also drew a check on the Citizens' Bank for $1,237.47, being the amount of the principal and interest of a note executed March 11, 1892, for $1,169.40. This note was executed at Harrison, Ohio, and was payable to the complainant at the Citizens' Bank, Harrison, Ohio, and was signed by the feme defendant and her husband. There is much conflict in the testimony in regard to the consideration of this note. I am of the opinion that to the extent of $482 the feme defendant received the consideration, and that to the extent of $737.40 it was received by her husband. I do not, however, think she is entitled to a credit for that sum and interest thereon in the present suit, because, in my opinion, the whole amount of that note was a valid obligation against her, and she rightfully appropriated the amount of her check to its payment. On December 5, 1892, she drew a check for $100, payable to herself, which she admits she received and applied upon a personal liability of her own. On December 5, 1892, she drew her check, payable to the complainant, for the sum of $990.45. This check was drawn to take up certain notes held by the complainant which were secured by a chattel mortgage executed by her and her husband. The undisputed evidence shows that the property covered by this chattel mortgage belonged to Frank B. Field, except one horse named "Fan," owned by Mrs. Field, which she valued at $25. If the note secured by this chattel mortgage represented obligations solely binding upon her husband, the evidence shows that they were amply secured and were valid as against him. She paid them off, and took them up. I know of no principle upon which, having taken up the valid obligations of her husband, she can claim credit for the money so paid, and still retain such obligations. A married woman can, if she chooses, make a gift of her money to her husband, and, if so, why may she not apply her money to buy or pay off a valid obligation existing against him? For the money thus applied by her she can claim no credit on the note and mortgage in suit. On December 3, 1892, she gave her check to R. D Templeton for $38.37. This was for a valid claim against her, and she is properly chargeable therefor. On December 6, 1892, she drew her check on the Citizens' Bank for $410, payable to M. O. Butterfield. This check was deposited by the payee in the Miami Valley Bank of Hamilton, Ohio, and was forwarded by it to the Citizens' Bank of Harrison, Ohio, and by the latter bank was duly paid to the former. The check was in payment of a horse named "Galvani," and I think the evidence shows that Frank B. Field bought the horse, and that the debt therefor was his. But, in my opinion, Mrs. Field cannot claim a credit therefor in this case, because the complainant was not chargeable at the time the check was paid with knowledge of the ownership of the horse, or that the check was to

pay a debt of her husband. Aside from this, I am of opinion that it would have been the duty of the Citizens' Bank to honor the check when presented, even if the complainant had known that it was drawn to pay a debt of her husband. On December 5, 1892, she drew her check on the Citizens' Bank, payable to the order of F. B. Field, for $650. This check was presented by, and was paid to, her husband, and he used the money for his own exclusive benefit. In my opinion, she had a right to give the money represented by this check to her husband, if she chose to do so. If she gave the check to him to draw the money and to bring it to her, and he betrayed his trust, I do not think the complainant can be charged therefor. The money drawn out on the above-mentioned checks drawn by her amounts to $4,032.56, being $32.56 in excess of the amount of the loan, as evidenced by the note and mortgage in suit. The exceptions to the master's report will therefore be overruled, and there will be a decree for the principal sum of $4,000, with the interest thereon to this date, to which will be added an allowance of $500 for attorney's fees. The decree will be for $6,124.89.